IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| Andrew McGonigle, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>Why Direct LLC,<br><br>       Defendant. | Case No: 3:25-cv-00934-RCY |

**Plaintiff's Response in Opposition To
Defendant's Motion to Stay and Compel Arbitration**

Defendant has moved to compel arbitration based on a purported website visit and consent to a so-called clickwrap agreement found on the website Snap Program Guide, located at https://snapprogramguide.com. Defendant says that Plaintiff visited Snap Program Guide on September 8, 2024, submitted his personal information (including his telephone number), and checked a box consenting to receive text messages from "third-party marketing partners" like Why Direct. ECF No. 11-1 at ¶¶ 28–31. Thus, Why Direct argues that by visiting Snap Program Guide and checking certain boxes, Plaintiff consented to receive telemarketing. ECF No. 11-1 at ¶¶ 29–31. But Plaintiff has never heard of the website Snap Program Guide—let alone visited the website. After Why Direct filed this motion, Plaintiff reviewed the website and confirmed what he already knew: he never visited Snap Program Guide. Notably, although Why Direct claims that it regularly captures "this kind of data," it does not claim to have personally reviewed the consent data pertaining to Mr. McGonigle and thus does not have firsthand knowledge of whether McGonigle consented. McGonigle does, and he did not consent to receive telemarketing or agree to arbitrate. For these reasons, Why Direct's motion should be denied.

1

**BACKGROUND**

This case concerns text messages that Plaintiff never consented to and asked to stop, and which were therefore made in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), by Defendant to market various goods and services. Defendant seeks to avoid this lawsuit by compelling arbitration based on the allegation that Plaintiff submitted his telephone number on a third-party website called Snap Program Guide, located at https://snapprogramguide.com/get-started/. In support of its motion to compel arbitration, Defendant has submitted supplementary materials contending that Plaintiff submitted his phone number through that website and agreed to arbitrate his claims against Defendant.

But Plaintiff has submitted a sworn declaration stating that he never visited Snap Program Guide prior to filing this case, never completed the alleged sign-up process, and never agreed to arbitrate any claims. (McGonigle Decl. ¶¶ 2, 5–7.) After Defendant filed its motion, Plaintiff visited the website for the first time and confirmed that he had never seen it before. (Id. ¶ 3.) Plaintiff has also confirmed that he has never been interested in applying for or receiving SNAP benefits, is not eligible for such benefits, and has never received any emails from Snap Program Guide. (Id. ¶¶ 4, 10.) Plaintiff therefore had no notice of any arbitration provision and did not agree to arbitrate any dispute with Defendant. (Id. ¶¶ 7–9.)

By contrast, Defendant has not confirmed that it personally reviewed any user-specific consent data pertaining to Plaintiff. Although Defendant describes in detail what a consumer would do upon visiting Snap Program Guide and states that it regularly reviews "this kind of data," it does not claim to have personally reviewed the purported consent data for Mr. McGonigle. See ECF No. 11-1 ¶¶ 10–27, 31–32. Defendant nevertheless makes extensive claims about what Plaintiff purportedly did—visited a website, agreed to terms and conditions, and provided his email

2

address, phone number, city of residence, and date of birth. See id. ¶¶ 9, 28–30. No one at Defendant personally observed Plaintiff visit any website or agree to any clickwrap agreement. Plaintiff, by contrast, has personal knowledge of his own actions and has testified under oath that he did not consent to telemarketing or agree to arbitrate. (McGonigle Decl. ¶¶ 6–9.)

### Legal Standard

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq.*, governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"). That issue is for the court, not the arbitrator, to decide, even when there is a valid delegation provision. here is a difference between disputes over arbitrability and disputes over contract formation. *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (court has "obligation to determine whether a contract was formed under 9 U.S.C. § 4" and resolve "the threshold issue of contract formation"). When a motion to compel arbitration is brought by a party, courts must first determine whether the parties agreed to arbitrate. *Id.*. If the record shows a material issue of fact on whether the parties had an agreement to arbitrate the party resisting arbitration is entitled to a jury trial.) *Davis v. TMC Rest. of Charlotte, LLC*, 854 F. App'x 518, 519-20 (4th Cir. 2021). The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate. *Wilson v. Huuuge, Inc.,* 944 F.3d 1212, 1219 (9th Cir. 2019). And "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to

3

arbitrate has been made." *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.,* 656 F.2d 933, 939 (4th Cir. 1981) (en banc).

**Argument**

### A. Plaintiff never agreed to arbitration.

"Arbitration is a matter of consent, not coercion." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 664 (2010). The Supreme Court has held time and time again that, despite the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela,* 587 U.S. 176, 184 (2019) Consent is essential under the FAA because arbitrators wield only the authority they are given. Id. The Supreme Court has held time and time again that, despite the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. Id. Consent is essential under the FAA because arbitrators wield only the authority they are given. Id. Defendant cannot invoke any arbitration clause against Mr. McGonigle because the factual question of whether the Plaintiff even agreed as a matter of contract is called into issue, as Mr. McGonigle's declaration points out that he never visited the Snap Guide website and the information Defendant contends was submitted was not submitted by him. Under Section 4 of the Federal Arbitration Act, a jury must decide this as a threshold to the threshold arbitrability matter, and jurisdiction lies with the Court on this issue, as confirmed by the Supreme Court in Coinbase, infra.

As the party seeking to arbitrate, Defendant bears the burden of demonstrating, at the same level as at summary judgment, both that legally valid arbitration agreement exists and that the Plaintiff himself agreed to be bound by the clause of which he had adequate legal notice. *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.,* 656 F.2d 933, 939 (4th Cir. 1981) (en banc). Both points which will be addressed below.

4

The Supreme Court recently addressed the proper procedure to follow when conflicts arise as to the existence of arbitration contracts. *Coinbase, Inc. v. Suski,* 602 U.S. 143, 143 (2024). The Supreme Court held that the first question in any arbitration dispute must be what the parties agreed to. Id. at 145. The Supreme Court clarified that this "fundamental" question is one for the court, not the arbitrator, to decide, and is driven by contractual interpretation principles under state contract law. Id. In Coinbase, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a court must address that challenge." Id. at 151 (*quoting Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 71 (2010). The Court went on to explain that in such cases, just like here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." Id. (*quoting Rent-A-Ctr.,* 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement."). And the explicit text of Section 4 makes it clear that formation is a jury issue, "upon such demand the court shall . . . specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4. As such, a jury trial is necessary to ascertain if the Plaintiff himself submitted his information to theclassactionguide.com and thus agreed to arbitrate, as the evidence in support of this is disputed.

"It goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002). Thus the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Info. Sciences, Inc. v. Board of*

*Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989). The FAA commands that, before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). And, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

Under Virginia law, the party asserting the existence and enforceability of a contract bears the burden of proof. That burden must be satisfied by a preponderance of the evidence, meaning the greater weight of all the evidence, not mere assertion or assumption. *Bloomberg-Michael Furniture Co. v. Coppes Bros. & Zook*, 141 Va. 18, 22 (1925). As the party seeking to arbitrate, the Defendant bears the burden of demonstrating, at the same level as at summary judgment, not only that a valid arbitration agreement exists but also that the *Plaintiff himself* agreed to be bound by the clause. *See Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). Defendant will be unable to do so because the Plaintiff denies ever having submitted his information. And Defendant has presented no other information or evidence to show that Plaintiff *himself* visited the website in question or submitted any information at all. All the information the Defendant has is outlined below:

| Allegation | Truth |
|---|---|
| Plaintiff submitted his name on snapprogramguide.com | Plaintiff has never seen snapprgoramguide.com before filing |
| Plaintiff provided his email address to the classactionguide.com | Plaintiff never provided his email to snapprogramguide.com |
| Plaintiff submitted his phone number | Plaintiff never submitted his phone number to snapprogramguide.com |
| Plaintiff provided his date of birth, | Plaintiff never entered information of any kind on the website alleged |

6

McGonigle Declaration as <u>Exhibit 1</u>.

To be clear, Plaintiff denies ever having agreed to arbitrate. Plaintiff confirms that he did not visit the theclassactionguide.com, had nothing to do with the purported website visit, and thus did not agree to arbitrate anything. (McGonigle Declaration at <u>Exhibit 1</u>). These factual disputes create issues of material fact and entitle Plaintiff to a jury trial on the question of whether the parties agreed to arbitrate. Despite Defendant's faulty evidence which demonstrates that it possesses no information that the Plaintiff himself, and not something like a website scraper or bot, submitted Plaintiff's information, and the Plaintiff's own denials, Defendant's motion is rife with the false and unsupported assertion that the "Plaintiff" submitted *his* phone number to the website in question. But, under well-established TCPA and arbitration law, the Defendant must establish that the Plaintiff *himself*, and not someone else, agreed to arbitrate claims. *Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501, at *5 (D. Mass. Mar. 25, 2024) (denying motion to compel arbitration and holding non-signatory family member was not bound by arbitration agreement despite being listed as an alternate contact on account).

Several decisions dictate that the Defendant's motion ought to be denied on the basis of the Plaintiff's declaration *alone*. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel arbitration by contending, as here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed, the court explained:

> Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. . . . Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click

"submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-*2 (cleaned up). *Hobbs* is one of several in a long line of cases either denying such motions outright or ultimately concluding that a summary arbitration trial was necessary. *E.g.*, *Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545, at *4 (M.D. Tenn. Apr. 16, 2025 ("[O]ther than the fact that Plaintiff's name and phone number were used, Prince Health offers no evidence that Plaintiff was the person who entered the information."); *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024).

The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. No. 4:24-CV-171-CLM, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9, 2025). There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.*

As a result, Defendant has been and will be unable to meet its burden of demonstrating even a genuine issue entitling the Plaintiff to wholesale denial of the motion. The court in *Conrad*

8

did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to justify an arbitration trial. *Id.* And, like in *Hobbs*, the Plaintiff has made similar allegations of faulty arbitrational facts, including his physical location and other mismatched information. 2019 WL 6878863, at *1–*2. And because the Plaintiff agreed to nothing, he did not agree to arbitrate or receive calls.

**B. Even if Plaintiff had agreed to arbitration, the agreement Why Direct purports to enforce is unconscionable.**

Even if Defendant could establish the existence of an agreement to arbitrate, the provision is unenforceable because it is a contract of adhesion that is substantively unconscionable under Virginia law. Virginia courts sitting in equity have long applied principles forbidding unconscionable contract clauses. *See Smyth v. Beresford*, 128 Va. 137, 170-71 (1920): *Philyaw v. Platinum Enterprises*, 54 Va. Cir. 364, 366 (Spotsylvania Cir. 2001) (J. Ledbetter) (arbitration clause in form motor vehicle sales contract).

The arbitration agreement is substantively unconscionable because it lacks mutuality by preserving the remedies the company values while eliminating the remedies Plaintiff would realistically pursue. In *Sanders v. Certified Car Ctr., Inc.*, the court explained that although an arbitration clause need not be supported by separate consideration, a court may decline to enforce such a provision where the rights and obligations it creates "unfairly lack mutuality," citing the Supreme Court of Appeals of West Virginia's analysis in *Dan Ryan Builders*. 93 Va. Cir. 404, 406–07 (Cir. Ct. 2016). Lack of mutuality is a central factor in determining whether an arbitration clause is unreasonably one-sided. *Id.* Here, the arbitration clause here preserves access to the judicial forum for the types of claims the company is likely to bring, while forcing consumers to arbitrate the only claims they are realistically positioned to assert. The agreement expressly exempts claims

9

for injunctive or equitable relief from arbitration—claims that, as a practical matter, are brought by companies seeking to protect their business interests. Consumers, by contrast, are required to arbitrate damages claims individually, even though those claims often involve small amounts that are not economically viable outside of court. This asymmetry strongly supports a finding of substantive unconscionability.

**CONCLUSION**

For the foregoing reasons, Defendant has failed to meet its burden of establishing the existence of any agreement to arbitrate between the parties. Plaintiff has submitted sworn testimony denying that he ever visited Snap Program Guide, submitted his personal information, or assented to any arbitration provision, and Defendant has offered no competent, user-specific evidence to rebut that testimony. At a minimum, these competing accounts create genuine issues of material fact that preclude enforcement of arbitration and entitle Plaintiff to a jury trial under Section 4 of the Federal Arbitration Act. Moreover, even assuming arguendo that an agreement existed, the arbitration provision Defendant seeks to enforce is an unconscionable contract of adhesion and therefore unenforceable under Virginia law. Accordingly, Defendant's Motion to Stay and Compel Arbitration should be denied in its entirety.

Dated: January 21, 2026                    Respectfully Submitted:

*/s/ William Robinson*
William Robinson
VSB:76098
319 N. Piedmont St., #1
Arlington VA. 22203
ph. 703-789-4800

10

wprlegal@gmail.com

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com
(617) 485-0018

11